IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

GLENN T. TURNER,

Plaintiff,

OPINION AND ORDER

12-cv-502-bbc

v.

BURTON COX, JR.
and JOLINDA WATERMAN,

Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Pro se prisoner Glenn Turner is proceedings on two claims under the Eighth Amendment regarding his medical care at the Wisconsin Secure Program Facility, in Boscobel, Wisconsin: (1) defendants Burton Cox, Jr., and Jolinda Waterman, a doctor and nurse at the prison, refused to treat his h. pylori infection from 2005 until March 2007; and (2) defendant Waterman failed to respond to plaintiff's emergency call in September 2006. Defendants have filed a motion for summary judgment under Fed. R. Civ. P. 56, dkt. #52, which is ready for review. I am granting defendants' motion for summary judgment because I conclude that no reasonable jury could find that defendants violated the Eighth Amendment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). Although plaintiff raised other issues besides the two identified above, I have disregarded them because they are outside the scope of this case.

1PRELIMINARY ISSUES REGARDING THE PROPOSED FINDINGS OF FACT

Under this court's procedures, the parties are required to present evidence to the court in a separate document in which they set forth individual factual propositions in numbered paragraphs, citing evidence in the record to support the proposed fact. Procedure to be Followed on Motions for Summary Judgment I.B., dkt. #12. In addition, the parties may respond to the other side's proposed findings of fact by agreeing to a particular fact or by disputing it. If a party disputes a fact, he must include his version of the fact and a citation to supporting evidence in the record. Id. at II.D. The court relies on these submissions to determine whether there are any genuinely disputed material facts that cannot be resolved without a trial. Fed. R. Civ. P. 56(a).

Plaintiff failed to follow these rules with respect to many of his responses. For example, plaintiff often objected to one of defendants' proposed facts by saying that it was "conclusory," "argumentative" or "unsupported by admissible evidence" without identifying how this objection applied to the particular proposed fact or citing any evidence in support of a contrary fact. Accordingly, I treated these facts as undisputed if I determined that they were relevant and no evidentiary problem was apparent.

In other cases, plaintiff disputed proposed facts on the ground that they relied on medical records for which plaintiff did not receive a "certified" copy. E.g., Plt.'s Resp. to Dfts.' PFOF ¶ 52, dkt. #76. However, the medical records defendants submitted are accompanied by an affidavit from a records custodian who avers that they are true and correct copies, dkt. #57, which is all that the Federal Rules of Evidence require. United

States v. Hampton, 464 F.3d 687, 690 (7th Cir. 2006) (under Fed. R. Evid. 901, custodian of record may authenticate).

Finally, with respect to some of plaintiff's disputes to defendants' proposed findings of fact, plaintiff did not point to contrary evidence, but instead simply *added* more facts or slightly restated defendants' version without saying how the two versions were different. However, the procedures state clearly that, "When a responding party disputes a proposed finding of fact, the response must be limited to those facts necessary to raise a dispute. The court will disregard any new facts that are not directly responsive to the proposed fact. If a responding party believes that more facts are necessary to tell its story, it should include them in its own proposed facts." Procedure, II.D.4. Accordingly, I have disregarded those responses as well.

## UNDISPUTED FACTS

### A. Parties

Plaintiff Glenn Turner is a prisoner at the Wisconsin Secure Program Facility in Boscobel, Wisconsin. Defendant Burton Cox, Jr. is a physician at the prison. Defendant Jolinda Waterman is a nurse.

### B. H. Pylori

H. pylori is a bacterium that may be found in the stomach, where it can cause the production of excess acid and make the stomach more susceptible to damage from that acid

by weakening the stomach lining, resulting in conditions such as gastritis and peptic ulcer disease.

A peptic ulcer is a sore on the lining of the stomach or the portion of the small intestine called the duodenum. Symptoms of an ulcer may include a gnawing or burning pain in the middle or upper stomach between meals or at night, bloating, heartburn, nausea and vomiting. In severe cases, the ulcer may cause bloody stool, vomiting blood, weight loss and severe pain in the middle or upper abdomen.

Gastritis is an inflammation, irritation or erosion of the lining of the stomach. Symptoms of gastritis may include nausea, recurrent upset stomach, abdominal bleeding, abdominal pain, vomiting (including vomiting blood), indigestion, burning or gnawing feeling in the stomach between meals or at night, hiccups, loss of appetite and bloody stools. If left untreated, it can lead to a serious loss of blood and an increase in the risk of developing stomach cancer.

Various tests exist to determine the presence of h. pylori and ulcers. Treatments include antibiotics to kill the bacteria, medication to reduce the amount of acid and surgery to remove the ulcer.

C. Plaintiff's History of Medical Complaints within the Department of Corrections

Between 1992 and 2005, plaintiff made the following medical complaints regarding pain or discomfort in his chest or abdomen:

- in 1992, plaintiff complained of pain in the left side of his chest and the

bottom angle of his chest and was given a diagnosis of gastritis;

- in 1993, plaintiff was given a diagnosis of "chest wall discomfort" after he complained that his chest was sore, denied any nausea or vomiting and admitted that he performed 300 push ups a day;
- in March1994, plaintiff complained that he had pain on both sides of his chest when he took a deep breath and was given ibuprofen;
- in April 1994, plaintiff complained of chest pain and denied nausea or vomiting; no significant findings were made;
- on August 19, 1994, plaintiff complained that his chest hurt; the diagnosis was "chest wall discomfort";
- on August 22, 1994, plaintiff complained that he had been suffering from chest pain "on and off for a year";
- in October 1994, plaintiff complained that he suffered from chest pain that lasted for a half hour, several times a day and received ibuprofen;
- in December 1994, plaintiff complained of a stomach ache and vomiting; for an assessment, the health care provider wrote, "gastritis?"; plaintiff received Pepto Bismol and Tylenol;
- in June 1995, plaintiff complained that he had been experiencing chest wall pain "since this morning"; plaintiff was given "medication" (the parties do not say what kind) and told to "lighten up on exercise";
- in November 2000, plaintiff complained of a "burning feeling" in his chest,

which he felt late at night; he was offered Maalox but refused it;

- in November 2001, plaintiff complained of chest pain but refused any medical care;
- in December 2001, plaintiff complained of chest pain and was treated with a "gastrointestinal cocktail" that included liquid antacid, viscous lidocaine and an anticholinergic;
- in January 2002, plaintiff complained of chest pain and a burning sensation and was given Maalox;
- in February 2002, plaintiff complained of chest pain that he had been experiencing since the morning and that he believed was heartburn;
- in June 2002, plaintiff complained of a burning sensation in his chest that was relieved somewhat when he belched; the diagnosis was heartburn and the treatment was Maalox;
- in November 2002, plaintiff complained of chest pain.

### D. Plaintiff's Medical Complaints from 2005 to 2007

On January 3, 2005, plaintiff saw defendant Cox for chest pain that plaintiff said he had been experiencing for two or three months. (The parties do not say whether Cox had provided any treatment to plaintiff before this date. Because plaintiff has the burden of persuasion on that issue, I must assume that Cox treated plaintiff for the first time in January 2005. NLRB v. Louis A. Weiss Memorial Hospital, 172 F.3d 432, 446 (7th Cir.

1999). Plaintiff described sharp, jabbing pains at the margins of his rib cage. (The parties dispute whether plaintiff told Cox that he was experiencing nausea, abdominal pain and acid reflux.) Cox diagnosed costochondritis, which is cartilage inflammation. Plaintiff asked defendant to perform a test for h. pylori, but Cox did not order the test.

On January 22, 2005, plaintiff complained to defendant Jolinda Waterman, a nurse at the prison, that he had "stomach problems." When Waterman asked plaintiff to describe his symptoms, he asked her what the symptoms were for h. pylori. When Waterman told plaintiff that the symptoms may vary, he said that he had diarrhea and "had trouble with urinating—I go too much." (In his response to defendant's proposed finding of fact, plaintiff says that he "does not recall" asking Waterman about the symptoms of h. pylori, but the evidence he cites does not support that statement. In any event, a statement that a witness "does not recall" an event is not enough to raise a genuine issue of material fact. Tinder v. Pinkerton Security, 305 F.3d 728, 735-36 (7th Cir. 2002).) A urinalysis was performed but the result was "negative." (The parties do not say what condition or conditions the test was supposed to detect.)

On April 15, 2005, defendant Cox scheduled an appointment with plaintiff after he complained of chest pain and a headache. On April 18, plaintiff complained to Cox about asthma and a headache.

On April 22, 2005, plaintiff complained to staff in the health services unit that he was suffering from nausea, dizziness, frequent urination and "stooling." He stated that his nausea occurs just before having a bowel movement. Staff checked his vitals and blood sugar

levels. They instructed plaintiff to "change positions slowly" and increase his fluid intake.

On June 20, 2005, plaintiff submitted a health services request in which he stated that he had been feeling nauseated and dizzy since the middle of May or the beginning of June. He described the feeling as similar to "a stomach flu or food poison." In addition, he said that he had been defecating and urinating more frequently than usual. In a response dated June 22, 2005, health services staff stated that plaintiff would be referred to defendant Cox.

On June 27, 2005, defendant Cox examined plaintiff, who told Cox that he still was lightheaded and nauseated, but that he felt better than the previous week. After checking plaintiff's vital signs, his weight and the results of a urinalysis, Cox told plaintiff to increase his water intake and decrease his activity during hot and humid weather.

On July 17, 2006, a correctional officer contacted the health services unit because plaintiff was complaining about chest pain. However, when staff asked that plaintiff be brought to the health services unit, plaintiff refused to come.

On September 5, 2006, plaintiff pressed the emergency call button after he began experiencing chest pains, nausea, dizziness and sweating. A correctional officer called the health services unit on plaintiff's behalf, but no one responded to the call.

Later the same day plaintiff submitted a health services request:

> On 9-5-06 when I woke up I was having chest pains approx. 6:06 am. but I thought it was side effects from my asthma inhaler. Then about 8:30-am while at inside rec. I became very dizzy and nauseous I sat down on the bar. and my scalp began to burn. then I broke out in a sweat all over my face, head and neck and arms. I pushed my intercom and the Sgt. Maddy sent the officers to come get me approx. 20 min. later. When I got to my cell I threw up. I pushed

my cell intercom- and again Sgt. Maddy said he call H.S.U. who never came.

On September 6, 2006, defendant Waterman provided the following response:

> HSU received notice of someone being nauseated at rec but it wasn't your name given. I was on the unit doing labs at the time. I verified with the Sgt today, and your name was logged. It was not an intention on HSU part to ignore you.
>
> I called Dr. Cox – he ordered the Ranitidine 2 tablets 2xday at morning and bedtime for 3 months. If your symptoms do not improve after 3 months, you will need to be seen by Dr. Cox.

Also on September 6, defendant Waterman examined plaintiff. He complained of symptoms such as nausea, burning throat and a sour taste in his mouth. Waterman gave plaintiff a bismuth tablet, which is used to treat diarrhea, nausea, heartburn, indigestion and upset stomach. Later that day, Waterman called Cox, who prescribed Ranitidine for reducing acid reflux.

On September 28, 2006, plaintiff complained to medical staff about "sharp" epigastric pain that he had been experiencing for about an hour. He stated that he had stopped taking Ranitidine because it did not work. Staff gave plaintiff an antacid.

On December 1, 2006, plaintiff complained to medical staff about chest pain. A nurse concluded that plaintiff's symptoms were consistent with "heartburn/GI problems." She gave him an antacid and put in a new order for Ranitidine. He agreed to contact the health services unit if the problems persisted or he needed to renew the prescription.

On March 12, 2007, plaintiff complained to defendant Cox about stomach pain, especially after drinking orange juice. Cox ordered an h. pylori screening, which tested positive. In response, Cox prescribed two antibiotics (Biaxin and Amoxicillin) to treat the

infection and one drug (Omeprazole) to reduce excess stomach acid. Follow up screenings for h. pylori on May 24, 2007 and September 6, 2007 tested negative.

Between 2004 and 2007, defendants treated at least five other prisoners at the Boscobel prison for an h. pylori infection.

## OPINION

### A. Failure to Diagnose H. Pylori Infection

Before discussing the merits of this claim, it is important to be clear about its scope. First, plaintiff did not allege in his complaint that defendants failed to give him adequate medical treatment after March 2007, when he tested positive for an h. pylori infection, so that issue is outside the scope of this lawsuit. In any event, it is undisputed that defendant Cox began treating plaintiff immediately after he tested positive and that two subsequent tests taken after plaintiff's treatment showed that he no longer had the infection. Thus, any criticisms plaintiff has of his treatment after March 2007 could not give rise to a claim under the Eighth Amendment.

Second, plaintiff does not contend that defendants failed to treat his various symptoms that he experienced between January 2005 (the first time defendant Cox saw plaintiff for chest pain) and March 2007. Rather, it is undisputed that each time he complained about his symptoms (with the exception of a delay in September 2006 that will be discussed below), defendants or someone else in the health services unit provided treatment in some form.

Thus, plaintiff's claim is that defendants should have tested him for h. pylori much earlier than they did so they could treat the underlying condition rather than just the symptoms. In other words, plaintiff's claim is that defendants violated the Eighth Amendment by failing to diagnose his condition sooner.

A prison official may violate the Eighth Amendment if the official is "deliberately indifferent" to a "serious medical need." Estelle v. Gamble, 429 U.S. 97, 104-05 (1976). A "serious medical need" may be a condition that a doctor has recognized as needing treatment or one for which the necessity of treatment would be obvious to a lay person. Johnson v. Snyder, 444 F.3d 579, 584-85 (7th Cir. 2006). The condition does not have to be life threatening. Id. A medical need may be serious if it "significantly affects an individual's daily activities," Gutierrez v. Peters, 111 F.3d 1364, 1373 (7th Cir. 1997), if it causes significant pain, Cooper v. Casey, 97 F.3d 914, 916-17 (7th Cir. 1996), or if it otherwise subjects the prisoner to a substantial risk of serious harm, Farmer v. Brennan, 511 U.S. 825 (1994). "Deliberate indifference" means that the officials are aware that the prisoner needs medical treatment, but are disregarding the risk by failing to take reasonable measures. Forbes v. Edgar, 112 F.3d 262, 266 (7th Cir. 1997).

Thus, under this standard, plaintiff's claim has three elements: (1) did plaintiff need medical treatment? (2) did defendants know that plaintiff needed treatment? and (3) despite their awareness of the need, did defendants consciously fail to take reasonable measures to provide the necessary treatment? On a motion for summary judgment, it is plaintiff's burden to show that a reasonable jury could find in his favor on each of these elements.

Henderson v. Sheahan, 196 F.3d 839, 848 (7th Cir. 1999).

The parties do not dispute that an h. pylori infection can be a serious medical need under some circumstances. However, defendants say that, to the extent that plaintiff had an infection before March 2007, it was not serious because it was asymptomatic. This argument raises two questions, which are whether the health problems that plaintiff experienced between January 2005 and March 2007 were caused by an h. pylori infection and, if so, whether defendants had sufficient notice of this that their failure to treat the underlying infection (rather than just the symptoms) constitutes an Eighth Amendment violation.

Neither side cites specific evidence about when plaintiff became infected with h. pylori or what caused plaintiff's symptoms between 2005 and March 2007. Instead, plaintiff says that it can be inferred from the symptoms themselves that they must have been caused by h. pylori.

Even if I assume that plaintiff does not need expert testimony to establish a causal link between his symptoms and the h. pylori, defendants deny that they recognized plaintiff's symptoms as signs of an h. pylori infection. Under those circumstances, plaintiff must meet a demanding standard to hold defendants liable under the Eighth Amendment:

> A medical professional's deliberate indifference may be inferred when the medical professional's decision is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible did not base the decision on such a judgment. Nevertheless, medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In evaluating the evidence, we must remain sensitive to the line between malpractice and treatment that is so far out of bounds that it was blatantly inappropriate or not even based on medical judgment.

King v. Kramer, 680 F.3d 1013, 1018 (7th Cir. 2012).

Plaintiff cannot meet this standard. Between January 2005 and March 2007, he complained to medical staff approximately ten times about some type of chest or abdominal pain or discomfort. However, even construing the facts in the light most favorable to plaintiff, he complained about acid reflux or similar symptoms only four times between January 2005 and March 2007 and he complained of vomiting only once, which is not uncommon for many people regardless whether they have an h. pylori infection. Further, defendants were involved in treating only two of those four complaints. On the other occasions, plaintiff complained about symptoms such as nausea or diarrhea or even more vague concerns such as "stomach problems." Although nausea is one symptom associated with h. pylori, it is such a common symptom related to so many other conditions that no reasonable jury could find that a failure to test for h. pylori from reports of nausea is "blatantly inappropriate," particularly when the nausea is paired with symptoms such as dizziness, diarrhea and frequent urination, which are not symptoms the parties have identified as being associated commonly with h. pylori.

Once plaintiff's complaints regarding epigastric distress became more consistent (after September 2006) and it appeared that the prescribed medication for reducing stomach acid was not effective, Cox decided to screen plaintiff for h. pylori. Plaintiff has not adduced evidence showing that the symptoms he experienced before then provided such obvious signs of an h. pylori infection as to demonstrate that defendants were not using medical judgment when they failed to screen him for h. pylori sooner. Steele v. Choi, 82 F.3d 175, 178-79 (7th

Cir. 1996) (affirming summary judgment to prison medical staff on prisoner's Eighth Amendment claim that defendants failed to diagnose hemorrhage when plaintiff's symptoms did not make it obvious that he had suffered a hemorrhage). Even if I were to assume that a "reasonable" doctor in the same circumstances would have acted more quickly, that is not enough to prevail on a claim under the Eighth Amendment. Id.

Plaintiff raises a number of arguments in an attempt to show that it was apparent that he was suffering from an h. pylori infection, but none of these are persuasive. First, he points out that he asked for an h. pylori test when defendant Cox examined him in January 2005. Cox denies that plaintiff complained at that time of any symptoms suggestive of h. pylori and Cox's testimony is supported by his contemporaneous notes. However, even if I credit plaintiff's testimony that he told Cox that he was suffering from nausea and acid reflux in January 2005, plaintiff has adduced no evidence to show that one complaint of those symptoms is enough to make it obvious that plaintiff needed to be tested for h. pylori.

Second, plaintiff says that Cox should have tested him for h. pylori because other prisoners at the Secure Program Facility had been diagnosed with the infection around the same time, but it is not clear what this adds to plaintiff's claim. To begin with, the parties have not cited any evidence regarding the way in which h. pylori is spread, so the presence of some prisoners with the infection may or may not be indicative of the likelihood that another prisoner has the same infection. In any event, plaintiff cites only five other prisoners who say they had the infection over a three-year period, so even if I assume that Cox or Waterman knew about the other cases (the parties do not say whether they did),

plaintiff has not shown that the other cases constitutionally required defendants to test plaintiff before his symptoms demonstrated a pattern consistent with an h. pylori infection.

Finally, plaintiff says that his history of stomach problems before 2005 should have given defendants notice of the likelihood that he was suffering from an h. pylori infection. Plaintiff does not cite any evidence that defendants *did* know about any symptoms he had before they started treating him, but even if I assume that they did, that would show only that plaintiff had complained of symptoms suggesting acid reflux or gastritis fewer than ten times over the course of more than ten years, the most recent of which had been more than two years earlier. Again, plaintiff cites no evidence that a pattern of that sort would make it obvious that plaintiff should be tested for an h. pylori infection. Accordingly, I am granting summary judgment to defendants on this claim.

### B. Incident on September 5, 2006

Plaintiff's second claim is that defendant Waterman violated the Eighth Amendment by failing to respond to an emergency health request he made on September 5, 2006. It is undisputed that plaintiff pressed his emergency call button on September 5, 2006, after he began experiencing chest pains, nausea, dizziness and sweating, that no one from the health services unit responded to the call and that plaintiff later vomited. The following day, Waterman examined plaintiff, gave him a bismuth tablet to treat his symptoms and called Cox, who prescribed a medication for reducing acid reflux.

Defendants argue first that Waterman cannot be held liable because she was not

notified that plaintiff was sick. Although Waterman stated in her response the following day that the heath services unit received a request from a prisoner who was nauseated, she also said that she did not receive the response because she was helping other prisoners in the housing units. If defendant Waterman did not know that there was a problem, she cannot be held liable for failing to respond to it, even if someone else in the health services unit did know. Burks v. Raemisch, 555 F.3d 592, 593-94 (7th Cir. 2009) ("Liability depends on each defendant's knowledge and actions, not on the knowledge or actions of persons they supervise."). Because plaintiff has not cited any evidence that defendant Waterman knew about his medical complaint, this claim must be dismissed.

Even if I assume that Waterman received the complaint, the facts show that the only symptom reported to the health services unit was nausea, which is not a serious medical need by itself, at least in the sense that it would require immediate treatment. Gayton v. McCoy, 593 F.3d 610, 613 (7th Cir. 2010) (nurse who received report of nausea "was not faced with a serious medical need that required immediate treatment"). Even an isolated instance of vomiting "is not an uncommon result of being mildly ill" so it "does not amount to an objectively serious medical condition" is the absence of aggravating circumstances. Id. at 621. Particularly because Waterman was busy with other patients at the time, a reasonable jury could not find that she violated the Eighth Amendment by waiting until the following day to examine plaintiff.

ORDER

IT IS ORDERED that the motion for summary judgment filed by defendants Burton Cox and Jolina Waterman, dkt. #52, is GRANTED. The clerk of court is directed to enter judgment in favor of defendants and close this case.

Entered this 26th day of November, 2013.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge